IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-00427-WDM

DAVID L. COLEMAN,
        Petitioner,

v.

AL ESTEP, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,
        Respondents.

_____

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS
_____

Miller, J.

        This matter is before me on *pro se* Petitioner David L. Coleman's Petition Under

28 U.S.C. § 2254 For Writ of Habeas Corpus ("Petition") (Docket No. 5).  Respondents

answered the Petition (Docket No. 15), and Petitioner filed a Traverse (Docket No. 16).

The Court must construe the Petition and other papers filed by Petitioner liberally

because he is not represented by an attorney.  *See Haines v. Kerner*, 404 U.S. 519,

520 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court

should not be an advocate for a *pro se* litigant.  *See Hall*, 935 F.2d at 1110.  After

reviewing the pertinent portions of the record in this case including the Petition, the

Answer, the Traverse, and the state court record (Docket Nos. 29 & 30), I conclude that

the Petition should be denied.

*Background*[1]

        The facts leading to Petitioner's conviction are as follows:  On November 20,

_____

        [1]The facts in this general introductory background are taken largely from the statement of the
case and the statement of facts in Petitioner's opening brief on direct appeal (Answer at Ex. A, pp.2-5).

1986, Petitioner was charged in case number 86CR1175 in the Arapahoe County District Court ("the trial court") with the offenses of first degree murder, felony murder, aggravated robbery, conspiracy to commit aggravated robbery, three counts of menacing, possession of a deadly weapon, and a crime of violence count.  The charges stemmed from the shooting death of David Clark in his home on November 7, 1986.  Mr. Clark earned his living by selling cocaine from his home.

On the night of the shooting, Mr. Clark was at home using and selling drugs.  Four other individuals, Robert Hartz, Miles Hudgens, Cherrie Epperson, and Jill Jackson, also were present in the house that night.  According to Hartz, he was in the basement with Hudgens when a tall black man carrying a sawed-off shotgun came downstairs and asked where the drugs were.  Hartz and Hudgens replied that they did not have any drugs and Hartz informed the gunman that the drugs were with Mr. Clark, who was upstairs.  The gunman then led Hartz and Hudgens upstairs and told them to lie down.  A shorter black man, who also had a shotgun, already was upstairs trying to remove something from Mr. Clark's pocket while Mr. Clark resisted.  The taller gunman told the shorter gunman to get the "stuff" and, when Mr. Clark continued to resist, to "shoot the motherfucker."  The shorter gunman stepped back and the taller gunman shot Mr. Clark.  The shorter gunman then removed several baggies of cocaine from Mr. Clark's pocket and both gunmen ran from the house.

Hudgens could not identify Petitioner as one of the gunmen.  However, Hartz told the police a few days after the shooting that he recognized the taller gunman as an individual who had worked at a nearby auto shop and, on November 17, 1986, Hartz identified Petitioner as the taller gunman in a photo-lineup.

On November 14, 1986, Petitioner was arrested at his workplace and a search of his automobile and apartment revealed shotgun shells and two shotguns. One of the shotguns was subjected to ballistics testing and was determined to be the weapon that caused Mr. Clark's death.

In November of 1986, Petitioner was living with his wife, their two children, and Michael Pederson, who was seventeen years old. Pederson was granted immunity and testified that Petitioner returned home one evening with his hand bloody and carrying a shotgun. According to Pederson, Petitioner had cocaine with him that night, which he shared with Pederson, and Petitioner indicated that he had gone to a guy's house and that the gun had gone off. Another witness, Bruce Stafford, who was Petitioner's co-worker, testified that Petitioner told him he had shot a guy on November 7, 1986.

Prior to trial, one count of menacing was dismissed. On April 20, 1987, Petitioner filed a motion to disqualify the trial judge, which the trial court denied. Petitioner also moved prior to trial to suppress evidence and statements that allegedly were obtained as a result of an illegal arrest and search. The suppression motion was granted in part and denied in part.

Following a jury trial in July 1987, Petitioner was found guilty as charged. The two murder convictions merged and Petitioner was sentenced to a total term of life in prison plus sixteen years. On direct appeal to the Colorado Court of Appeals ("CCA"), the judgment of conviction was affirmed. *See People v. Coleman*, No. 87CA1457 (Colo. Ct. App. Sept. 27, 1990) (unpublished decision) ("*Coleman I*") (Answer at Ex. C). On June 17, 1991, the Colorado Supreme Court denied Petitioner's petition for writ of certiorari on direct appeal. (Answer at Ex. E.)

3

On November 8, 1991, Petitioner filed in the trial court a postconviction motion for sentence reconsideration pursuant to Rule 35(b) of the Colorado Rules of Criminal Procedure. The Rule 35(b) motion was denied at a hearing on April 8, 1993. (*See* Trial Tr., Vol. 23, 4/8/93 Hr'g.)

On September 4, 1992, Petitioner filed in the trial court a postconviction motion to correct his sentence, arguing that the two convictions for first-degree murder should not have merged. That motion was granted and the trial court entered an amended mittimus vacating the felony murder conviction.

On June 16, 1994, Petitioner filed in the trial court a postconviction motion pursuant to Rule 35(c) of the Colorado Rules of Criminal Procedure. Over the course of the next ten years, a supplemental Rule 35(c) motion and an amended Rule 35(c) motion were filed and different attorneys were appointed to represent Petitioner. Following a hearing held on various dates over the course of several months, the trial court ultimately issued a written order denying relief pursuant to Rule 35(c) on June 24, 2004. The CCA subsequently affirmed the trial court's order. *See People v. Coleman*, No. 04CA1566 (Colo. Ct. App. July 19, 2007) (unpublished decision) ("*Coleman II*") (Answer at Ex. I). On January 14, 2008, the Colorado Supreme Court denied Petitioner's petition for writ of certiorari in the postconviction Rule 35(c) proceedings. (Answer at Ex. K.)

Petitioner claims in the Petition that: (1) he was denied his right to testify at trial and counsel on direct appeal was ineffective by failing to raise a claim that Petitioner was denied his right to testify; (2) the CCA's failure to address his claim that he was denied his right to testify at trial violated his constitutional rights; (3) the jury instructions

4

improperly defined the burden of proof; (4) the trial court erred in denying his motion to disqualify the judge; (5) the CCA erred in rejecting Petitioner's claim that the trial judge should have disqualified himself; (6) the trial court erred in failing to suppress evidence discovered as the result of custodial interrogation that occurred after Petitioner invoked his right to counsel; and (7) his right to confrontation was violated when the trial court improperly limited defense counsel's cross-examination of Michael Pederson. Respondents do not argue that this action is barred by the one-year limitation period in 28 U.S.C. § 2244(d).

*Failure to Raise Federal Constitutional Issue*

I note initially that Petitioner's second claim, in which he challenges the CCA's failure to address his claim that he was denied his right to testify at trial, lacks merit because the claim relates to state court postconviction proceedings and not the validity of Petitioner's conviction or sentence. The order to which Petitioner refers in his second claim is the CCA's order affirming the denial of his postconviction Rule 35(c) motion. However, there is no federal constitutional right to postconviction review in the state courts. *See Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987). A claim of constitutional error that "focuses only on the State's post-conviction remedy and not the judgment which provides the basis for [Petitioner's] incarceration . . . states no cognizable federal habeas claim." *Sellers v. Ward*, 135 F.3d 1333, 1339 (10th Cir. 1998); *see also Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir. 1993) (noting that petitioner's challenge to state "post-conviction procedures on their face and as applied to him would fail to state a federal constitutional claim cognizable in a federal habeas proceeding"). Therefore, Petitioner's second claim will be dismissed.

5

*Exhaustion of State Remedies*

Respondents first argue in their Answer that Petitioner failed to exhaust state remedies for claims one, two, four, and five. Pursuant to 28 U.S.C. § 2254(b)(1), an application for a writ of habeas corpus may not be granted unless it appears that the applicant has exhausted state remedies or that no adequate state remedies are available or effective to protect the applicant's rights. *See O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994). The exhaustion requirement is satisfied once the federal claim has been presented fairly to the state courts. *See Castille v. Peoples*, 489 U.S. 346, 351 (1989). Fair presentation requires that the federal issue be presented properly "to the highest state court, either by direct review of the conviction or in a postconviction attack." *Dever*, 36 F.3d at 1534.

Furthermore, "the substance of a federal habeas corpus claim" must have been presented to the state courts in order to satisfy the fair presentation requirement. *Picard v. Connor*, 404 U.S. 270, 278 (1971); *see also Nichols v. Sullivan*, 867 F.2d 1250, 1252 (10th Cir. 1989). Fair presentation does not require a habeas corpus petitioner to cite "book and verse on the federal constitution." *Picard*, 404 U.S. at 278 (internal quotation marks omitted). However, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam). A claim must be presented as a federal constitutional claim in the state court proceedings in order to be exhausted. *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (per curiam).

Finally, "[t]he exhaustion requirement is not one to be overlooked lightly."

*Hernandez v. Starbuck*, 69 F.3d 1089, 1092 (10th Cir. 1995). A state prisoner bringing a federal habeas corpus action bears the burden of showing that he has exhausted all available state remedies before seeking federal relief. *See Miranda v. Cooper*, 967 F.2d 392, 398 (10th Cir. 1992).

1. Claim One

As noted above, Petitioner alleges in claim one that he was denied his right to testify at trial and that counsel on direct appeal was ineffective by failing to raise a claim that Petitioner was denied his right to testify. Respondents argue that Petitioner failed to exhaust the right to testify claim because Petitioner did not raise the exact same claim either on direct appeal or in the state court postconviction Rule 35(c) proceedings. Respondents argue that the portion of claim one in which Petitioner alleges direct appeal counsel was ineffective is not exhausted because postconviction counsel abandoned that argument at the trial court level. Petitioner argues in his Traverse that both portions of claim one are exhausted because the identical claims were raised in the state court postconviction Rule 35(c) proceedings.

Petitioner's claim that his right to testify at trial was denied is premised on his contention that he was not advised adequately of the consequences of testifying. More specifically, Petitioner contends that the trial court suppressed certain statements made by Petitioner but failed to rule on whether those statements were voluntary. Petitioner further contends that a ruling on the voluntariness of the suppressed statements was the most critical factor bearing on his decision of whether to testify. As a result, Petitioner maintains that his right to testify was violated because he could not knowingly and intelligently waive that right without a ruling on the voluntariness of the suppressed

statements.

I have reviewed Petitioner's opening brief to the CCA on appeal from the denial of his postconviction Rule 35(c) motion. Contrary to Respondents assertion that Petitioner failed to raise the same right to testify claim in that proceeding, I find that Petitioner raised before the CCA the same claim that he was denied his right to testify. Therefore, I find that the right to testify claim is exhausted.

To the extent Petitioner is claiming that direct appeal counsel was ineffective for failing to raise a claim that Petitioner was denied his right to testify, I find that claim is not exhausted. The CCA determined that postconviction counsel withdrew this claim during the trial court's hearing on the Rule 35(c) motion and, as a result, declined to consider the argument on appeal. Pursuant to 28 U.S.C. § 2254(e)(1), I must presume that factual determination is correct and Petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. Petitioner has not presented any evidence, let alone clear and convincing evidence, to rebut the presumption of correctness. Therefore, I find that the portion of Petitioner's first claim in which he contends that appellate counsel was ineffective for failing to raise a claim that Petitioner was denied his right to testify at trial was not fairly presented to the CCA and is not exhausted.

2. Claim Two

I need not address Respondents' argument that Petitioner's second claim is not exhausted because, as discussed above, Petitioner's second claim does not raise a cognizable federal constitutional issue.

3. Claim Four

Petitioner argues in his fourth claim that the trial court erred in denying his motion to disqualify the judge. Respondents argue that this claim is not exhausted because it was raised on direct appeal solely as a violation of Colorado state law and not as a federal constitutional claim. Petitioner responds that the claim was raised as a federal constitutional claim because he cited a United States Supreme Court case, *Tumey v. Ohio*, 273 U.S. 510 (1927), in support of this claim in his opening brief on direct appeal. In *Tumey*, the Supreme Court held that due process is violated when a defendant is tried by a judge who "has a direct, personal, substantial pecuniary interest in reaching a conclusion against [the defendant] in his case." *Tumey*, 273 U.S. at 523.

Respondents' argument did not address the fact that Petitioner cited *Tumey* in his opening brief, and therefore, I will not dismiss Petitioner's fourth claim as unexhausted.

4. Claim Five

Petitioner's fifth claim, in which he argues that the CCA erred in rejecting his fourth claim, is dependent on the success of the fourth claim.

*Procedural Default*

Although Petitioner failed to satisfy the fair presentation requirement with respect to the portion of his first claim in which he contends that appellate counsel was ineffective for failing to raise a claim that Petitioner was denied his right to testify at trial, I may not dismiss the claim for failure to exhaust state remedies if Petitioner no longer has an adequate and effective state remedy available to him. *See Castille*, 489 U.S. at 351. It is apparent that Petitioner no longer has an adequate and effective state remedy available to him because, with limited exceptions that are not applicable to the

unexhausted claim, the Colorado Rules of Criminal Procedure bar Petitioner from raising a claim in a postconviction motion that could have been raised previously. *See* Colo. R. Crim. P. 35(c)(3)(VII) ("The court shall deny any claim that could have been presented in an appeal previously brought or postconviction proceeding previously brought"); *see also People v. Bastardo*, 646 P.2d 382, 383 (Colo. 1982) (stating that postconviction review is not available to address under a recently contrived constitutional theory issues that were raised previously). Therefore, I find that the portion of Petitioner's first claim in which he contends that appellate counsel was ineffective for failing to raise a claim that Petitioner was denied his right to testify at trial is procedurally defaulted.

As a general rule, federal courts "do not review issues that have been defaulted in state court on an independent and adequate state procedural ground, unless the default is excused through a showing of cause and actual prejudice or a fundamental miscarriage of justice." *Jackson v. Shanks*, 143 F.3d 1313, 1317 (10th Cir. 1998). Application of this procedural default rule in the habeas corpus context is based on comity and federalism concerns. *See Coleman v. Thompson*, 501 U.S. 722, 730 (1991). Petitioner's *pro se* status does not exempt him from the requirement of demonstrating either cause and prejudice or a fundamental miscarriage of justice in order to overcome a procedural default. *See Lepiscopo v. Tansy*, 38 F.3d 1128, 1130 (10th Cir. 1994).

Petitioner fails to demonstrate either cause or prejudice for his procedural default. He also fails to demonstrate that a failure to consider the unexhausted claim will result in a fundamental miscarriage of justice. Therefore, I find that the portion of

Petitioner's first claim in which he contends that appellate counsel was ineffective for failing to raise a claim that Petitioner was denied his right to testify at trial is procedurally barred and must be dismissed.

*Merits of the Exhausted Claims*

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

I review claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question is whether Petitioner seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice.* Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of my inquiry

pursuant to § 2254(d)(1). *See id.* at 1018. If a clearly established rule of federal law is

implicated, I must determine whether the state court's decision was contrary to or an

unreasonable application of that clearly established rule of federal law. *See Williams*,

529 U.S. at 404-05.

> A state-court decision is contrary to clearly
> established federal law if: (a) "the state court applies a rule
> that contradicts the governing law set forth in Supreme Court
> cases"; or (b) "the state court confronts a set of facts that are
> materially indistinguishable from a decision of the Supreme
> Court and nevertheless arrives at a result different from [that]
> precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th
> Cir. 2006)] (internal quotation marks and brackets omitted)
> (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is
> commonly understood to mean 'diametrically different,'
> 'opposite in character or nature,' or 'mutually opposed.'"
> *Williams*, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable
> application of clearly established federal law when it
> identifies the correct governing legal rule from Supreme
> Court cases, but unreasonably applies it to the facts. *Id.* at
> 407-08. Additionally, we have recognized that an
> unreasonable application may occur if the state court either
> unreasonably extends, or unreasonably refuses to extend, a
> legal principle from Supreme Court precedent to a new
> context where it should apply.

*House*, 527 F.3d at 1018.

My inquiry pursuant to the "unreasonable application" clause is an objective

inquiry. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the

writ simply because that court concludes in its independent judgment that the relevant

state-court decision applied clearly established federal law erroneously or incorrectly.

Rather that application must also be unreasonable." *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. "[O]nly the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Id.*

I review claims in which Petitioner asserts factual errors pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section 2254(d)(2) allows me to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to that court. Pursuant to § 2254(e)(1), I must presume that the state court's factual determinations are correct and Petitioner bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

Finally, I "owe deference to the state court's *result*, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, I "must uphold the state court's summary decision unless [my] independent review of the record and pertinent federal law persuades [me] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178. "[T]his 'independent review' should be distinguished from a full de novo review of the petitioner's claims." *Id.*

If a claim was not adjudicated on the merits in state court, and if the claim also is not procedurally barred, I must review the claim *de novo* and the deferential standards of § 2254(d) do not apply. *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

*Discussion*

1. Claim One

Petitioner first claims that he was denied his right to testify at trial and that counsel on direct appeal was ineffective by failing to raise a claim that Petitioner was denied his right to testify. As noted above, Petitioner's claim that he was denied his right to testify at trial is premised on his contention that he was not advised adequately of the consequences of testifying. Petitioner concedes that the trial court advised him regarding his right to testify and that he elected not to testify. However, Petitioner contends that the trial court failed to rule on the voluntariness of certain statements, which had been suppressed prior to trial, and that a ruling on the voluntariness of the suppressed statements was the most critical factor bearing on his decision of whether to testify. Underlying this argument is the fact that, if the statements were voluntary, they would be admissible to impeach Petitioner if he chose to testify. *See Oregon v. Hass*, 420 U.S. 714, 722-23 (1975); *Harris v. New York*, 401 U.S. 222, 225-26 (1971). Ultimately, Petitioner contends that his right to testify was violated because he could not knowingly and intelligently waive that right without a ruling on the voluntariness of the suppressed statements.

Respondents argue that Petitioner's right to testify claim lacks merit because there is no clearly established federal law that requires any particular advisement prior to a waiver of the right to testify. The CCA declined to address Petitioner's claim that he

14

was denied his right to testify. Therefore, I must review the claim de novo. *See Gipson*, 376 F.3d at 1196.

A defendant in a criminal case has a fundamental constitutional right to testify in his own defense. *See Rock v. Arkansas*, 483 U.S. 44, 51-53 (1987). Furthermore, "[t]here is a presumption against the waiver of constitutional rights, and for a waiver to be effective it must be clearly established that there was an intentional relinquishment or abandonment of a known right or privilege." *Brookhart v. Janis*, 384 U.S. 1, 4 (1966) (internal quotation marks and citations omitted). However, there is no clearly established federal law that places an affirmative duty on a trial court to advise a defendant of his right to testify or to obtain a waiver of that right on the record. *See Thompson v. Battaglia*, 458 F.3d 614, 619 (7th Cir. 2006).

Petitioner fails to demonstrate that his decision not to testify was anything other than an intentional relinquishment of a known right. Furthermore, because there is no clearly established federal law that requires a trial court to advise a defendant regarding his right to testify, Petitioner cannot demonstrate that his federal constitutional right to testify was violated by the trial court's failure to rule on and specifically advise him regarding the voluntariness of his suppressed statements prior to his waiving his right to testify.

Petitioner cites a number of state court cases that he believes are relevant to his claim that he was denied his right to testify at trial. However, the state court cases are not relevant to the question of whether the trial court's failure to rule on the voluntariness of the suppressed statements violated Petitioner's federal constitutional rights. Even assuming Petitioner could demonstrate the advisement he received

15

regarding his right to testify was inadequate under state law because he was not advised regarding the voluntariness of the suppressed statements, that alone would not demonstrate his federal constitutional right to testify was violated because "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

Finally, even assuming a constitutional violation did occur, I find that any error was harmless. "[I]n § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard" in *Brecht v. Abrahamson*, 507 U.S. 619 (1993). *Fry v. Pliler*, 551 U.S. 112, 121 (2007); *see also Palmer v. Hendricks*, 592 F.3d 386, 398-99 (3d Cir. 2010) (concluding that violation of right to testify is not a structural error because the effect of the error can be ascertained under traditional harmless error standards); *Ortega v. O'Leary*, 843 F.2d 258, 262 (7th Cir. 1988) (applying harmless error analysis to right to testify claim). Pursuant to *Brecht*, a constitutional error does not warrant habeas relief unless I conclude it "had substantial and injurious effect" on the jury's verdict. *Brecht*, 507 U.S. at 637. If the evidence is balanced so evenly that I am in grave doubt about whether the error meets this standard, I must hold that the error is not harmless. *O'Neal v. McAninch*, 513 U.S. 432, 436-37 (1995). I make this harmless error determination based upon a review of the entire state court record. *See Herrera v. Lemaster*, 225 F.3d 1176, 1179 (10th Cir. 2000).

Assuming a constitutional violation occurred, I cannot conclude that the alleged error in denying Petitioner his right to testify had a substantial and injurious effect on the jury's verdict because Petitioner fails to set forth what his testimony would have been.

16

As a result, no allegations or evidence is before me to counter the substantial evidence in the state court record that demonstrates Petitioner's guilt. Therefore, I find that any violation of Petitioner's constitutional right to testify was harmless and Petitioner's claim that he was denied his right to testify will be dismissed.

As discussed above, Petitioner's contention that counsel on direct appeal was ineffective for failing to raise the right to testify claim will be dismissed as procedurally barred.

2. Claim Two

Petitioner's second claim, in which he challenges the CCA's failure in the Rule 35(c) proceedings to address his claim that he was denied his right to testify at trial, does not raise a federal constitutional claim as discussed above. However, even assuming Petitioner's second claim could be construed as asserting a federal constitutional claim, the claim is dependent upon the right to testify claim. Therefore, because I have determined that the right to testify claim lacks merit, Petitioner's claim that the CCA violated his constitutional rights by failing to address that claim also lacks substantive merit.

3. Claim Three

Petitioner alleges in his third claim that the jury instructions created a structural error by improperly defining the burden of proof. According to the CCA,

> Each of the "elements" instructions given to the jury at defendant's trial contained the language, "After considering all the evidence, if you decide the prosecution has failed to prove each of the elements beyond a reasonable doubt . . . ." (Emphasis added.) This language tracks that found in the pattern jury instructions at the time of defendant's trial. The trial court, in a separate instruction,

further instructed the jury, "If you find from the evidence that the People have failed to prove any one or more of the elements of any count beyond a reasonable doubt, you will find the defendant not guilty as to that count."

Defendant argues that because the current language of the pattern jury instructions was changed in 1993 to "the prosecution has failed to prove <u>any one or more of the elements</u> beyond a reasonable doubt," <u>e.g.</u>, CJI-Crim. 3:04 (Supp. 1993)(emphasis added), the language of the pattern jury instructions given at his trial constitutes structural error requiring reversal of his conviction.

*Coleman II* at 5-6.  Petitioner further argues that:

the jury should not have been instructed that the prosecution must fail to prove every or each of the elements in order for [Petitioner] to receive a not guilty verdict.  All that is required in order for [Petitioner] to receive a not guilty verdict is that the prosecution fail to prove any <u>one</u> or more elements, as opposed to failing to prove all of the elements.  It is clear that there is a substantial difference between the language that was used in [Petitioner's] instructions and the correct language.

(Traverse at 3.)

Respondents argue that Petitioner's third claim lacks merit because there is no substantive difference between the language Petitioner challenges and the revised language that Petitioner maintains is correct.  Respondents further argue that the claim lacks merit because a separate instruction actually was given to the jury that included the language Petitioner maintains is correct.  With respect to this latter argument, Petitioner contends that, even though the correct language was given in a separate general instruction, the erroneous instruction was given six times and there was no way the jury could have known which instruction to follow.  Respondents finally argue that Petitioner is not entitled to relief on this claim because the Supreme Court has never

held that a jury must be instructed as to reasonable doubt using the language that Petitioner contends is correct.

It was clearly established when Petitioner was convicted that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970); *see also Sullivan v. Louisiana*, 508 U.S. 275, 277-78 (1993). As a result, "a jury instruction violates due process if it fails to give effect to that requirement." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004).

> Nonetheless, not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation. The question is "'whether the ailing instruction . . . so infected the entire trial that the resulting conviction violates due process.'" *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). "'[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.'" *Boyde v. California*, 494 U.S. 370, 378 (1990) (quoting *Cupp*, supra, at 146-147). If the charge as a whole is ambiguous, the question is whether there is a "'reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Estelle*, supra, at 72 (quoting *Boyde*, supra, at 380).

*Middleton*, 541 U.S. at 437 (parallel citations omitted).

The CCA reasoned as follows in rejecting Petitioner's claim challenging the jury instructions:

> Although the current language may be more precise than that found in the pattern jury instructions in effect at the time of defendant's trial, there is no basis for concluding that instructions using the prior language gave rise to structural error. Both phrases require that the prosecution prove all the elements beyond a reasonable doubt in order for the jury to convict. Further, the trial court had no way of anticipating

a change in the pattern instructions that would not occur until
six years after defendant's trial.

Considering the jury instructions as a whole, we
conclude that the jury was adequately informed of the
prosecution's burden to prove each element of the crimes
charged beyond a reasonable doubt and that the trial court
committed no error, plain or otherwise.

*Coleman II* at 6 (citation omitted).

I find that the jury at Petitioner's trial was adequately advised of the prosecution's

burden of proof and what was necessary in order to return a guilty verdict. The fact that

Colorado's pattern jury instructions were revised after his trial to arguably provide a

more clear statement of the prosecution's burden of proof does not mean that the jury

instructions used violated due process. I agree with Respondents and the CCA that

there is no substantive difference. Furthermore, a separate instruction that included the

language Petitioner maintains is correct actually was given to the jury. Therefore, when

considering the jury instructions as a whole, I find that Petitioner was not denied due

process. As a result, Petitioner's third claim will be dismissed because the CCA's

rejection of that claim is neither contrary to nor an unreasonable application of clearly

established federal law.

4. Claim Four

Petitioner argues in his fourth claim that the trial court erred in denying his motion

to disqualify the judge. The CCA accurately described the factual basis for this claim as

follows:

Prior to trial, the prosecution and defense counsel
were summoned for an unscheduled hearing. The judge
furnished counsel with a memo received from a deputy
sheriff, relating events that occurred while the deputy was

escorting defendant and two other inmates from court earlier in the day.  According to the deputy, defendant motioned to a [sic] automobile and stated, "So that's the judge's car, huh?  I'll fix him."  At approximately the same time he received the memo, the judge was also notified of an attempted break-in at his home.

As a result of these events, the judge ordered additional security for the courtroom including four additional deputies.  The judge also ordered that defendant be secured with leg shackles, handcuffs, and weights.

Defense counsel filed a motion to substitute judge with supporting affidavits.  After an investigation, defense counsel represented to the court that defendant had made no threat, but that the deputy had misheard him.  Rather than saying, "I'll fix him," defendant in fact had stated, "It [the car] fits him," or words to that effect.

The motion and affidavits described the sequence of events which led the judge to order increased security and stated that, at the time the orders were entered, the judge was wearing a gun which was visible to the attorneys.  The documents contained defendant's denial of any threat, a statement that the judge considered him dangerous, and statements that the orders, actions, and statements of the court gave the appearance of bias.

Following a hearing on the motion three days after entry of the security orders, the court set aside the orders, but it denied defendant's motion for substitution.

*Coleman I* at 1-2.  Respondent argues that this claim lacks merit because there is no clearly established federal law requiring disqualification in the absence of actual bias.

"[M]ost questions concerning a judge's qualifications to hear a case are not constitutional ones, because the Due Process Clause of the Fourteenth Amendment establishes a constitutional floor, not a uniform standard."  *Bracy v. Gramley*, 520 U.S. 899, 904 (1997) (citing *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 828 (1986)).  "But the floor established by the Due Process Clause clearly requires a 'fair trial in a fair

tribunal.'" *Id.* (quoting *Withrow v. Larkin*, 421 U.S. 35, 46 (1975)).  Furthermore, the constitutional floor requires "a judge with no actual bias against the defendant or interest in the outcome of his particular case."  *Id.* at 905 (citing *Aetna Life Ins. Co.*, 475 U.S. at 821-22 & *Tumey*, 273 U.S. at 523).

Petitioner cannot demonstrate a violation of his constitutional rights because the facts alleged in support of his fourth claim do not demonstrate the existence of any actual bias by the trial judge.  Petitioner's argument that the trial judge should have granted the motion to disqualify, which was based on the facts described above, is insufficient to state a federal constitutional claim.  Furthermore, the only federal case Petitioner cites in support of his fourth claim is *Tumey*, which, as noted above, held that due process is violated when a defendant is tried by a judge who "has a direct, personal, substantial pecuniary interest in reaching a conclusion against [the defendant] in his case."  *Tumey*, 273 U.S. at 523.  However, Petitioner does not allege, and there is no indication anywhere in the file or the state court record, that the judge who presided over Petitioner's trial had a direct, personal, and substantial pecuniary interest in the outcome of the case.  It bears repeating that,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*.  Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House*, 527 F.3d at 1016.  Therefore, because Petitioner fails to allege facts in support of his fourth claim that demonstrate actual bias by the trial judge, I find that the claim lacks merit and must be dismissed.

5. Claim Five

Petitioner's fifth claim, in which he alleges that the CCA erred in rejecting his fourth claim, obviously is dependent upon the success of the fourth claim. Therefore, because Petitioner's fourth claim lacks merit and will be dismissed for the reasons discussed above, Petitioner's fifth claim also lacks merit and will be dismissed.

6. Claim Six

Petitioner alleges in his sixth claim that the trial court erred in failing to suppress evidence discovered as the result of custodial interrogation that occurred after Petitioner invoked his right to counsel. Petitioner allegations are:

> There is no dispute that when [Petitioner] was arrested at his workplace, he immediately and unequivocally invoked his right to counsel. Even so, the police asked Petitioner for his home address. Contrary to usual practice, which would involve obtaining routine background information from a Petitioner upon booking him at the police station, the police obtained Petitioner's address before transporting him from the scene of the arrest to the police station. Petitioner's address was relayed to the lead detective who was then able to find Petitioner's residence. The police knocked on the door of Petitioner's apartment and were allowed inside by Petitioner's wife. While the police were inside, they noticed a shotgun in a brightly illuminated closet. Using this information, they obtained a search warrant to search [Petitioner's] apartment. Since the discover [sic] of the shotgun and subsequent search of Petitioner's home was [sic] the direct result of police interrogation that was conducted in violation of Petitioner's constitutional right to counsel, the evidence seized should have been suppressed.

(Petition at 6.k (citations omitted).)

Pursuant to the Fifth Amendment to the United States Constitution, a criminal suspect has the right not to be questioned while in custody without the assistance of a

lawyer. *Miranda v. Arizona*, 384 U.S. 436, 467-72 (1966). If an individual expresses a desire to deal with the police only through counsel, the police may not subject the individual to further interrogation until counsel has been made available to him, unless the individual validly waives his right to counsel by initiating further communication with the police. *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981). At the time Petitioner was convicted, evidence obtained pursuant to interrogation occurring after a defendant invoked his right to counsel was subject to exclusion unless the evidence inevitably would have been discovered through lawful means. *See Nix v. Williams*, 467 U.S. 431, 441-48 (1984).

The CCA applied this clearly established federal law and concluded that the evidence seized in the search of Petitioner's apartment properly was admitted at trial. "Here, even if we assume that defendant's address was illegally obtained, there is evidence in the record to support that defendant's address would have been, and was, discovered from the independent and ongoing police investigation." *Coleman I* at 6.

The CCA's factual determination that the Petitioner's address inevitably would have been discovered through independent lawful means is presumptively correct and Petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1). Because Petitioner has not presented clear and convincing evidence to rebut the presumption of correctness, I find that the CCA's legal conclusion based on that factual determination is neither contrary to nor an unreasonable application of clearly established federal law. Therefore, Petitioner's sixth claim also will be dismissed.

      7.  Claim Seven

Petitioner finally claims that his right to confrontation was violated when the trial court improperly limited defense counsel's cross-examination of Michael Pederson. Petitioner explains the factual basis for this claim as follows:

> At [Petitioner's] trial, the court committed reversible error when it ruled, <u>sua sponte</u>, that defense counsel could not cross-examine Michael Pederson regarding the length of the prison sentences he would be facing if he were charged and convicted of offenses arising from his possible involvement in the robbery of David Clark. Defense counsel was allowed to ask Mr. Pederson only if he was aware that he "could be facing severe penalties at the Department of Corrections for any charges that might ever be filed against you as a result of what happened on November 7th." Such a general inquiry has significantly less probative impact than the specific inquiry which counsel sought to make regarding Mr. Pederson's awareness that he could receive a sentence of up to 32 years if he were convicted of armed robbery.
>
> The trial court refused to allow defense counsel to cross-examine Mr. Pederson as to the precise criminal penalties he would be facing, because some of the penalties coincided with the penalties that [Petitioner] was facing. However, the court's concern that the jury not be exposed to any of the penalties for the charged offenses should not override Petitioner's right to expose fully the bias of an adverse witness through cross-examination.
>
> Pederson's testimony was critical to the prosecution's case, and the prohibited cross-examination was particularly relevant to Mr. Pederson's bias in testifying. Pederson gave eyewitness testimony placing Petitioner on the night of the shooting with Robert Samms, an individual who matched the description of the shooter's accomplice. He also testified that Petitioner returned home on the night of the killing at about 10:00 p.m., carrying a sawed-off shotgun. According to Pederson, Petitioner admitted that the gun had gone off while he was committing a robbery. There was also disputed testimony that Pederson helped Petitioner cut his hair to alter his appearance on the night of the offense.

(Petition at 6m (citations omitted).)

The Confrontation Clause guarantees an accused the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. One of the primary interests secured by the Confrontation Clause is the right of cross-examination, *see Davis v. Alaska*, 415 U.S. 308, 315 (1974), because cross-examination "is the principal means by which the believability of a witness and the truth of his testimony are tested," *id.* at 316. However, a defendant does not have an unlimited right to cross-examination, and the trial court retains "wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). Thus, "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam).

The CCA rejected Petitioner's Confrontation Clause claim because defense counsel was allowed to cross-examine Pederson regarding his immunity as well as his expectation of leniency in testifying against Petitioner. Respondents argue that Petitioner's seventh claim lacks merit because this determination was neither contrary to nor an unreasonable application of clearly established federal law.

I do not find that the trial court's limitation on defense counsel's cross-examination of Pederson denied Petitioner the opportunity for effective cross-examination in violation of the Confrontation Clause. Prohibiting defense counsel from cross-examining Pederson regarding the specific penalties he could face if charged and

convicted, in light of the fact that Petitioner faced the same penalties, was not unreasonable because defense counsel was allowed to ask Pederson if he was aware that he would be facing severe penalties in the Department of Corrections if charged and convicted. I do not agree with Petitioner's assertion that the impact of limiting defense counsel's cross-examination in this manner was significantly less probative than being able to ask Pederson if he knew he could receive a sentence of up to thirty-two years. As a result, I conclude that the CCA's rejection of Petitioner's Confrontation Clause claim was not contrary to or an unreasonable application of clearly established federal law and the Confrontation Clause claim also will be dismissed.

Accordingly, it is ordered:

1. Petitioner David L. Coleman's Petition Under 28 U.S.C. § 2254 For Writ of Habeas Corpus ("Petition") (Docket No. 5) is denied.

2.    This case is dismissed with prejudice.

3.    There is no basis on which to issue a certificate of appealability pursuant to 28

U.S.C. § 2253(c).

DATED at Denver, Colorado, this <u>12th</u> day of <u>May</u>, 2010.

BY THE COURT:

_____
Walker D. Miller
Senior United States District Judge